# EXHIBIT B

STATE OF MICHIGAN
IN THE CIRCUIT COURT
COUNTY OF WAYNE

Yonah Ferder;
Michael Abraham.

        Case. No.: 2025-013517-NZ

    Plaintiffs,        Hon.: Hon. Kevin J. Cox

v.

Detroit Hotel Services LLC
d/b/a Detroit Marriott at the Renaissance Center

Schindler Elevator Corporation,
A Foreign Profit Corporation.


    Defendants, Jointly and Severally.
_____

| Martin E. Radner (P79894) | Anthony A. Agosta (P57355) |
| Solomon M Radner (P73653) | Lauren E. Giese (P87884) |
| Radner Law Group, PLLC | CLARK HILL PLC |
| Attorney for Plaintiff | Attorneys for Defendants |
| 17515 West Nine Mile Road, Suite 1050 | 500 Woodward, Ste 3500 |
| Southfield, MI  480375 | Detroit, MI 48226 |
| (313) 573-8761 / (248) 281-5264 Fax | (313) 965-8300 |
| martin@radnerlawgroup.com | aagosta@clarkhill.com |
| | lgiese@clarkhill.com |

_____

## SECOND AMENDED COMPLAINT

*There is no other pending or resolved civil action arising
out of the transaction or occurrence alleged in the Complaint.*

NOW COME Plaintiffs, by and through counsel, Martin E. Radner and Radner Law

Group PLLC, allege and state as follows:

### PARTIES, JURISDICTIONS, AND VENUE

1.    Plaintiff Yona Ferder at all pertinent times resided in Oakland County, Michigan.

2. Plaintiff Michael Abraham, at all pertinent times resided in Oakland County, Michigan.

3. Defendant Detroit Hotel Services LLC, d/b/a Detroit Marriott at the Renaissance Center, is a Foreign For-Profit Corporation, with a Resident Agenet of The Corporation Company, and a registered office at CSC-LAWYERS INCORPORATING SERVICE, 3410 Belle Chase Way, Ste 600, Lansing, MI 48911. ("Marriott.")

4. Defendant Schindler Elevator Corporation, is a Foreign For-Profit Corporation, with a Resident Agent of The Corporation Company, and a registered office at 40600 Ann Arbor Rd, Ste 201, Plymouth, MI 48170. (Schindler.")

5. Defendants operate within the State of Michigan, County of Wayne.

6. The facts and circumstances giving rise to the instant action, took place at the Marriott Hotel in the Renaissance Center, in Detroit, MI, County of Wayne.

7. The amount in controversy exceeds $25,000.00.

## FACTS

8. The October 30, 2022, incident that gives rise to this action took place at the Marriott Hotel, inside the Renaissance Center in Downtown Detroit.

9. This action revolves around the plaintiffs being trapped in an elevator for over 90 minutes, while the defendants did nothing to get them out, opting instead to lie to the Detroit Fire Department and to the plaintiffs, falsely claiming that a tech was working on fixing the elevator and freeing the plaintiffs.

10. On October 30, 2022 at around 4:30 PM, the plaintiffs arrived at the Detroit Marriott to attend a dinner ("The Dinner").

11. The Dinner is widely known throughout Southeastern Michigan as not only a fundraiser, but as an opportunity for its attendees to gather with the literal 'who's who' of many business, philanthropical, and political leaders.

12. Past keynote speakers at The Dinner have included President Joseph Biden, First Lady Laura Bush, President George Bush, Nikki Haley, Colin Powell, Prime Minster Tony Blair, First Lady Jill Biden, and others.

13. The attendees at The Dinner often include state and federal judges, members of Congress, and the Governor of Michigan.

14. As such, The Dinner is an event that many attend not only to support an amazing institution, but also to network with the attendees.

15. Plaintiffs attended The Dinner on October 30, 2022, with the hopes of being able to network and be inspired by the speeches.

16. Plaintiffs arrived at around 4:30 PM and headed towards the elevators.

17. The plaintiffs and others, totaling 12 people, entered the elevators and pushed the button to head to the floor where the Hors D'Oevres were being served.

18. Almost immediately after the elevator doors closed and the elevator began to move, it stopped suddenly with a lurch.

19. The plaintiffs waited with the hopes that the elevator would begin moving again, to no avail.

20. The plaintiffs pushed the service button and spoke to an operator, advising that they were stuck and asking to call the fire department.

21. There being limited if any cell phone reception in the elevator, the plaintiffs' cell phones were not working.

22. Eventually one plaintiff was able to connect with 911 and advised 911 of what was taking place.

23. The Detroit Fire Department ("DFD") made the scene shortly thereafter and stood outside of the elevator together with a Marriott representative.

24. While it is hard to estimate exactly how long it took, it was not long before someone was standing outside the elevator telling the plaintiffs that the situation was being handled.

25. Though Plaintiffs were stuck in between floors, they were able to pry open the inner door a couple inches and were able to see a Marriott representative, standing there. She assured Plaintiffs that help was on the way.

26. What followed was 90 minutes of the Marriott's and/or Schindler's lies, disrespect, and apathy, as they told the plaintiffs and the Detroit Fire Dept. that:

   a. there were no maintenance people on-site to get us out

   b. that they called Schindler but nobody answered

   c. that they had a maintenance person on the way

   d. that the fire dept was on the way

   e. that the fire dept arrived

   f. that the maintenance tech had arrived and would reset the elevator from the roof, and that we would be out in a few minutes

   g. an estimated 30 minutes later, that the maintenance tech was really on his way to the Detroit Marriott

   h. that the elevator was about to be reset and that someone was on the roof resetting it

27. Eventually, after about 90 minutes, the Detroit Fire Dept. made the decision to pry the door open with the jaws of life or some other similar equipment.

28. It had become obvious that the Marriott's and/or Schindler's primary concern was to preserve the elevator doors; they were content with Plaintiffs remaining imprisoned for as long as it took so long as the elevator doors were not harmed. They were entirely apathetic to the fact that 12 people were imprisoned who advised them repeatedly that it was extremely hot and stuffy; that someone had actually suffered a panic attack, that they were repeatedly asking through the crack in the door for water to no avail.

29. Plaintiffs were advised that Marriott and/or Schindler could have pried the door open enough to get the plaintiffs water but were too concerned about preserving the elevator doors, so this suggestion was rebuffed by Defendants.  In fact, the Marriott and/or Schindler folks refused to allow ***anyone*** to pry the door open so much as a crack so that the plaintiffs could even get some fresh air.

30. Thankfully, a good Samaritan did so anyway, over the Marriott's and/or Schindler's objections.

31. Once the doors were finally pried open, Plaintiffs were still about 8-10 feet above the floor. Plaintiffs each had to slide through a square hole in the bottom left corner of the elevator that was around 2.5 feet by 2.5 feet, and then had to be caught by the firemen who were waiting for them outside the elevator. Such a rescue was certainly extremely unpleasant for everyone, especially for one rather elderly gentleman. Picture below from inside the elevator, after it had been pried open:



32. Just so we are clear, Plaintiffs do not fault the firemen at all – as far as Plaintiffs are concerned, DFD acted as heroes. Without their decision to break the doors open, Marriott and/or Schindler may have kept Plaintiffs imprisoned indefinitely, to save the elevator doors. But the rescue was still traumatic.

33. There was a surveillance camera in the elevator. See picture below:



34. The subject elevator was "Elevator #6." See picture below:



35. On Nov. 18, 2022, Marriott Claims Adjuster, Tracey Sfikas, advised via email that Marriott had conducted an investigation and that it was all Schindler's fault, and that Marriott had "tendered the claim to them." Further, on Dec. 1, 2022, Ms. Sfikas further advised via email that all pertinent evidence had been preserved by Marriott.

36. Plaintiffs learned subsequently that the elevator at the Detroit Marriott had frequent problems and that a similar event had transpired the night before, yet they were not properly fixed and were kept open for members of the public to utilize and get trapped in.

37. Plaintiff Abraham suffered a panic attack while entrapped in the elevator.

38. Plaintiff Ferder suffered a back injury while entrapped in the elevator.

## COUNT I – NEGLIGENCE

39. Plaintiff incorporates by reference all prior allegations.

40. Defendants owed a duty to Plaintiff to act reasonably and with due care.

41. In breach of this duty, Defendants knew or should have known, through inspection or lack thereof, that this elevator was not in working order and should not have available for public use.

42. In further breach, Defendants lied to the plaintiffs and to the DFD as described herein, thereby keeping the plaintiffs imprisoned.

43. In further breach, Defendants did not keep the elevator in good repair.

44. Plaintiffs suffered harm as a direct and foreseeable result of Defendants' actions and inactions.

## COUNT II – PREMISES LIABLITY

45. Plaintiff incorporates by reference all prior allegations.

46. The defendants owed the plaintiff a duty, specifically maintaining elevators in a reasonably safe condition. This duty arises from the special relationship between hotels and their guests, as guests entrust their safety to the hotel's control. The duty extends to protecting guests from unreasonable risks of harm caused by dangerous conditions on the premises, including defective elevators.

47. The defendants breached that duty.

48. The breach was the proximate cause of the plaintiffs' damages.

49. The plaintiffs suffered damages.

WHEREFORE, Plaintiffs respectfully pray of this Honorable Court that judgment be entered in favor of Plaintiffs and against Defendants, and that the Court award all permissible damages in an amount in excess of $25,000.00, to be determined by a jury, and any and all other relief permitted by law.

Respectfully Submitted,

/s/ *Solomon M Radner*
Martin E. Radner (P79894)
Solomon M Radner (P73653)
*Attorney for Plaintiffs*
RADNER LAW GROUP PLLC
17515 W. 9 Mile Road, Ste 1050
Southfield, MI, 48075
Martin@RadnerLawGroup.com
Tel: (877) 723-6375

DATED: JANUARY 20, 2026